1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  RAMON GARCIA,                          C 10-5949 TEH (PR)
              Petitioner,
10

11          v.                            ORDER DENYING PETITION FOR WRIT
                                          OF HABEAS CORPUS; DENYING
12  JAMES YATES, Warden,                  CERTIFICATE OF APPEALABILITY
              Respondent.
13
   _____/
14

15

16          Pro se Petitioner Ramon Garcia, a state prisoner

17  incarcerated at the Pleasant Valley State Prison, located in

18  Coalinga, California, seeks a writ of habeas corpus under 28 U.S.C.

19  § 2254 to vacate his conviction resulting from a plea of no contest.

20  For the reasons that follow, the Court denies the petition.

                                    I

21          On April 22, 2008, Petitioner pleaded no contest to two

22  counts of committing a lewd and lascivious act on a child under the

23  age of fourteen and one count of furnishing a controlled substance,

24  namely methamphetamine, to a minor.  Petitioner admitted the

25  allegations that he had substantial sexual contact with the victim

26  and that the victim was at least four years younger than him at the

27

28                                  1

time he provided her with the methamphetamine.  Respondent's Ex. 1 at 9-10, Reporter's Transcript (RT) of Plea Hearing.  Petitioner admitted that he had two prior felony convictions.  Respondent's Ex. 1 at 11, RT of Plea Hearing.  On September 29, 2008, Petitioner moved to withdraw his plea, claiming that his guilty plea was not made knowingly, voluntarily and intelligently.  Respondent's Ex. 3 at 4, Motion to Withdraw Plea.  On December 15, 2008, the trial court denied Petitioner's motion.  Respondent's Ex. 5 at 6, RT of Hearing on Motion to Withdraw Plea.  On February 23, 2009, the trial court sentenced Petitioner to eighteen years in state prison.  Respondent's Ex. 7 at 16, RT of Sentencing Hearing.

On December 21, 2009, Petitioner filed a petition for writ of habeas corpus in the superior court.  Respondent's Ex. 10, Petition for Writ of Habeas Corpus.  On January 27, 2010, the court denied the petition.  Respondent's Ex. 11, <u>In re Garcia</u>, California Superior Court, Santa Clara County, no. BB624298 (January 27, 2010).

On February 15, 2010, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied on August 18, 2010.  Respondent's Ex. 12 and 13.

On December 21, 2010, Petitioner filed the instant federal petition.  On May 16, 2011, this Court ordered Respondent to show cause as to why the petition should not be granted on the claims of ineffective assistance of trial counsel and prosecutorial misconduct.

II

The following factual background is taken from the Probation Officer's Report that was prepared for the state

2

sentencing court.  Respondent's Ex. 14, Probation Officer's Report (July 10, 2008).

On December 11, 2006, middle school students Chelsea S. and Allison G. told their principal that they were worried about their thirteen-year old friend, Jane Doe, because she had not shown up for school.  Chelsea reported that Doe had called her the night before and said that she had smoked methamphetamine and possibly performed sexual acts with Petitioner, who was thirty-seven years old.  The principal called the police and reported a sexual assault.  Police officers responded to the school and interviewed Chelsea.

Chelsea gave the officers more details of her conversation with Doe.  She said that, when she spoke to Doe, Doe was crying and seemed "out of it."  Doe told Chelsea that, the night before, she was at a sleep over at the home of her friend, Elizabeth T. and that Petitioner was also at Elizabeth T.'s home.  Chelsea S. was familiar with Petitioner as he was frequently at Elizabeth T.'s home, and Chelsea believed Petitioner was a friend of Elizabeth T.'s family.  Doe told Chelsea that she and Petitioner decided to go for a drive, that Petitioner provided her with methamphetamine, they both smoked it, and that Petitioner "fingered" her and "ate her out."  Doe was unsure if Petitioner had raped her.

On December 11, 2006, police officers contacted Doe at her residence.  The police officers told Doe that her friends had mentioned "Ray", (Petitioner), and wanted to make sure she was not hurt.  Doe told officers "I'm not, he didn't do anything."  Doe told officers she "smoked" and had trouble remembering things when she smoked.  She told officers her friends were confused because "she

3

said something stupid." Doe could not recall what she had told her friends and became visibly upset and started crying. She told officers she did not want to get anyone in trouble. She then said: "Here's the truth. I got high. Ray fingering me it's not his fault. I agreed to do that too. So it's not his fault, it's my fault too. I didn't know what I was doing, and it's been bugging me a lot, and I wish it never happened, and I don't want Ray to get in trouble. I don't want him to go to jail." Doe had promised Petitioner she would not tell anyone what happened and told officers she "f*cked up."

Doe also told officers that she suffered from depression and, when she was depressed, she did not care about what she did or what happened to her. She agreed to submit to a Sexual Assault Response Team examination and officers took her to the hospital.

Police officers located Petitioner's address through his vehicle information and determined that he was on active probation for possession of methamphetamine. When the police officers interviewed Petitioner, he told them that he was friends with Elizabeth T.'s mother and through her, had gotten to know Elizabeth T. and her friends. Petitioner told the officers that on December 9, 2006, he received several text messages from "the girls", who were having a party at Elizabeth T.'s house. The officers only found text messages from Doe on Petitioner's telephone.

Initially, Petitioner denied having physical contact with Doe and providing her with narcotics. When the officers asked Petitioner whether any of his DNA would be found in Doe's vaginal area, he began to cry and requested to speak with Police Chief

4

Lacey, whom he knew and trusted.  After speaking with Chief Lacey, Petitioner resumed speaking with the officers and admitted lying to them.  He still denied providing Doe with methamphetamine, but he admitted having physical contact with her in his car.  Petitioner said that, on Sunday December 10, 2006, while in the parking lot of a Starbucks, Doe asked Petitioner to give her methamphetamine and he refused.  Petitioner told the officers that Doe kissed him and made him touch her vagina.  The entire contact lasted a few seconds and then Petitioner drove Doe back to Elizabeth T.'s house.  Petitioner denied orally copulating Doe or receiving oral sex from her. Petitioner wrote a letter of apology to Doe which included, "What happened in the car was fast.  You were weak.  You trusted me and I let you down.  Sorry."

When police officers interviewed Doe a second time, she told them that Petitioner had arrived at Elizabeth's house at around 1:30 a.m., and he drove Doe to his home, where they smoked methamphetamine.  She said that Petitioner kept the methamphetamine in a Charlie and the Chocolate Factory DVD case, and they used a glass pipe to smoke it.  She said that she and Petitioner began kissing as they sat on the couch, and that Petitioner then touched her vagina, and moved her to the floor where he orally copulated her.  She said that she could not get away because Petitioner was holding her down and would not let her go.  She could not remember anything else because she was under the influence of methamphetamine at the time.

When the officers searched Petitioner's home, they found that Doe had accurately described it.  They found a Charlie and the

Chocolate factory DVD case containing methamphetamine and a plastic
pipe containing white residue that Doe also had described to them.

### III

Under the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may
not grant a writ of habeas corpus on any claim adjudicated on the
merits in state court unless the adjudication:  "(1) resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States; or (2) resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court
may grant the writ if the state court arrives at a conclusion
opposite to that reached by [the Supreme] Court on a question of law
or if the state court decides a case differently than [the] Court
has on a set of materially indistinguishable facts."  <u>Williams
(Terry) v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  "Under the
'unreasonable application' clause, a federal habeas court may grant
the writ if the state court identifies the correct governing legal
principle from [the] Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case."  <u>Id.</u> at 413.

"[A] federal habeas court may not issue the writ simply
because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal
law erroneously or incorrectly.  Rather, that application must be

6

objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  <u>Felkner v. Jackson</u>, __ U.S. __, 131 S. Ct. 1305, 1307 (2011) (citation omitted).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 n.6 (9th Cir. 2002).  Because the California Supreme Court summarily denied relief on Petitioner's claims and Petitioner did not file a petition in the appellate court, this Court looks to the state superior court's January 27, 2010 written decision denying Petitioner's petition.

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims.

## IV

## A

Petitioner alleges that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases and, therefore, he received ineffective assistance of counsel.  Petitioner contends that "trial counsel was well aware

7

of the fact that Petitioner had suffered a serious head injury in the year of 1994" which left him with seizures and some brain damage.  Petitioner contends that, due to the head injury, he was unable to comprehend the nature and the seriousness of the court proceedings and the charges against him and, thus, his guilty plea was not made knowingly and intelligently.  Petitioner also asserts that counsel failed to investigate his head injury as a potential defense to the crime charged against him.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>

Where the alleged error is counsel's failure to investigate a potential defense before advising his client to enter a plea, the salient inquiry is whether "discovery of the evidence would have led counsel to change his recommendation as to the plea." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  In turn, advice to enter a plea rather than to go to trial may depend on whether "the affirmative defense likely would have succeeded at trial."  <u>Id.</u> This is an objective analysis that requires an examination of what a

reasonable person would do "without regard for the 'idiosyncrasies of the particular decisionmaker.'"  Id. at 60, (quoting Strickland, 466 U.S. at 695).  Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrated that the additional evidence was unlikely to change the outcome at trial, so that the defendant would have pled guilty despite the additional evidence.  Id. at 56.

The only evidence that Petitioner submits to establish that he was incompetent are pages three and four of a medical report regarding a head injury he sustained in 1994.  Petitioner's Ex. C, Operative Report.  The section entitled "Operative Technique and Findings" indicates that Petitioner had surgery for a linear skull fracture and large acute epidural hematoma, and that he "tolerated the procedure well" and was "able to follow commands and move all four extremities" after the surgery.  Id.  This section of a medical report does not state that Petitioner's injuries or any symptoms from it persisted after the surgery.  Petitioner's injuries occurred fourteen years prior to the date of his guilty plea and the only evidence he submits does not demonstrate that he was unable to comprehend the nature and the seriousness of the court proceedings and the charges against him.

Furthermore there is evidence in the record that the head injury from 1994 did not have lasting symptoms.  Petitioner was employed in his father's housecleaning business for approximately seventeen years until 2005, when he started his own auto detailing business.  Respondent's Ex. 8 at 12, RT of Motion to Withdraw Plea.  Petitioner's ability to start a business in 2005 is evidence that

his head injury in 1994 did not have serious lasting effects.   Thus, there is no reason to believe that trial counsel's failure to investigate deprived Petitioner of a defense at trial or that Petitioner was not competent when he entered the plea of guilty. Given the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, Petitioner's counsel's decision not to explore further the question of Petitioner's competence does not constitute deficient performance.

The state superior court held that Petitioner failed to show ineffective assistance of counsel, stating: "Petitioner alleges counsel was ineffective for failing to question petitioner's competence at the time of his plea.   However, there was no evidence that Petitioner displayed symptoms indicating his incompetence at that time."   The state superior court's determination was not contrary to or an unreasonable application of Supreme Court authority or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   Therefore, this claim for habeas relief is denied.

B

Petitioner claims that the prosecutor committed misconduct by withholding exculpatory material from the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963).   Specifically, Petitioner contends that by failing to disclose that Chelsea S. was a victim in a sexual assault felony case "very similar to this case", the prosecution violated Petitioner's due process rights.   Petitioner argues that this was "crucial evidence that was material to the

impeachment of the sole witness in his case."

Doe was sexually assaulted in December 2006 and Chelsea was sexually assaulted in June 2007, six months after Doe was assaulted.  Chelsea's alleged attacker was unknown to her, and the attack occurred while she was under the influence of drugs or alcohol.  An independent witness saw the attacker pick Chelsea up on the street and put her in his car while she was under the influence. The witness wrote down the license plate number and called the police.  DNA belonging to the defendant in Chelsea's case was found on a bathrobe in her home where the assault took place.

Petitioner's counsel found out about Chelsea's case afer Petitioner had entered his guilty plea.  Petitioner filed a motion to withdraw his plea in the superior court, arguing that evidence of Chelsea's assault could impeach her testimony against Petitioner at a trial.  The court verbally denied the motion at the hearing. Petitioner stated the claim again in a habeas petition in the superior court, which denied the claim, stating that there was no showing that the trial court's denial of Petitioner's motion to withdraw his guilty plea was erroneous and thus, Petitioner "failed to show that the prosecution violated his due process rights."

Prosecutorial misconduct is cognizable in federal habeas corpus proceedings.  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  <u>Id.</u>  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  <u>Id.</u> at 193.  In <u>Brecht v. Abrahamson</u>, the Supreme Court held that the appropriate standard on

federal habeas corpus review of a claim of prosecutorial misconduct is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  507 U.S. 619, 637.

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u> at 87.  The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, <u>United States v. Agurs</u>, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985).  For a <u>Brady</u> claim to succeed, (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) that evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice[1] must have ensued. <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004); <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

If the defendant pled guilty, "materiality is determined by whether there is a reasonable probability that but for the failure to disclose the <u>Brady</u> material, the defendant would have refused to plead and would have gone to trial." <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) (quotations and

---

[1] For the purpose of <u>Brady</u>, the terms "material" and "prejudicial" have the same meaning. <u>United States v. Kohring</u>, 637 F.3d 895, 902 n.1 (9th Cir. 2011).

12

citation omitted).

In the present case, the fact that Chelsea was sexually assaulted by a stranger six months after Petitioner's assault on Doe does not exculpate Petitioner nor impeach Chelsea.  As the state trial court stated about the effect of Chelsea's assault on Petitioner's case:

> There is nothing favorable to his case. It neither helps him nor hurts the prosecution.  It does not provide any evidence that [Doe] and Chelsea conspired to falsely accuse men of sexual assault or provide evidence that reflects on their credibility.

Respondent's Ex. 8 at 10, RT of Motion to Withdraw Plea.

Not only did Chelsea's assault occur six months after Petitioner assaulted Doe, the facts of each assault were different. Furthermore, by the time Chelsea was assaulted, Petitioner had already admitted to having sexual contact with Doe and Doe had provided corroborating evidence by accurately describing Petitioner's house and the location of the methamphetamine they had smoked, inside a Charlie and the Chocolate Factory DVD case. Furthermore, police officers had found other incriminating evidence against Petitioner, including the letter of apology he wrote to Doe and the text messages between Petitioner and Doe.  Thus, there was no Brady violation because Chelsea's assault was not material to Petitioner's case.

The state habeas court's decision, which relied on the reasoning of the trial court, was not contrary to or an unreasonable application of Supreme Court authority or an unreasonable determination of the facts in light of the evidence.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

13

V

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.

Further, a Certificate of Appealability is DENIED.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.


IT IS SO ORDERED.


DATED     <u>10/02/2012</u>          _____
                                    THELTON E. HENDERSON
                                    United States District Judge


G:\PRO-SE\TEH\HC.10\Garcia 10-5949 HC Deny.wpd

14